## BRUCE'S JUICES, INC., v. AMERICAN CAN COMPANY

22 So. (2nd) 461          June Term, 1944
October 20, 1944          En Banc
Rehearing granted April 17, 1945
Further rehearing denied June 29, 1945

*Cody Fowler* and *Shackleford, Farrior & Shannon,* for appellant.

*John M. Allison, Harry B. Terrell* and *Whitaker, Whitaker, & Terrell,* for appellee.

THOMAS, J.:

An action on promissory notes culminated in a judgment for the plaintiff, and the defendant appealed.

Inasmuch as no question presented here for determination requires an analysis of the declaration, we shall proceed immediately to give a condensation of the pleas which appear to have given rise to the questions, four in number, which we must decide.

The first plea set out that notes were given for cans purchased from the payee by the maker and that the transaction was unlawful because the former "while engaged in commerce among the several states, directly and indirectly discriminated in price between different purchasers of . . . cans, of like grade and quality, . . . sold for use and resale within the United States . . ." the effect of which "was substantially to lessen competition or tend to create a monopoly . . . and to injure, destroy and prevent competition with certain customers of . . . defendant in violation of paragraph (a) of Section 13 of Title 15, United States Code. . . ."

The second plea contained the allegations that the discrimination was "in favor of certain purchasers of . . . cans, and against the defendant, a competitor of such purchasers,

which cans were bought for resale in interstate commerce by furnishing to such purchasers . . . equipment for the closing of cans . . . without cost or charge . . . while charging rent for said equipment furnished to the defendant, in violation of paragraph (e)" of the same section and title of the code.

In the third plea it was averred that there was discrimination by the allowance or discounts "to . . . purchasers over and above any discounts . . . available at the time . . . to . . . the defendant and others similarly situated in respect of the sale of . . . cans, of like grade, quality and quantity, in violation of Section 13a" of the same title of the code. This plea is amplified by the statements that two companies in the same business of canning juices in Tampa and selling their products throughout the country as competitors of defendant were allowed a "large and discriminatory discount [5%]" not available to it and were relieved of delivery charges which defendant was required to pay; that three other companies selling products in competition, but evidently not canning in the State, were likewise favored.

In the fourth plea it was charged that plaintiff sold cans in Texas for less than in Florida in violation of Section 13a, supra.

The appellant has observed in the brief that we need not, in our consideration of the controversy, make "any reference to the voluminous testimony set forth in the record inasmuch as the trial court took the position . . . the defense of illegality . . . was not available" and "correctly stated the gist of the defenses" as the illegality and unenforceability of the notes "because the transaction in which they were executed [was] unlawful because plaintiff violated the Robinson-Patman Act, U.S.C.A., Title 15, Section 13." The court concluded that the defenses could not be presented for the reason that the federal statutes prescribe the only available remedy, and transactions in violation of these laws are not "Malum in se but Malum prohibita only."

The initial question challenges the ruling of the circuit judge that any remedy secured to the defendant by "the Sherman Anti-Trust Law as amended by the Clayton Act and as amended by the Robinson-Patman Act" could not be em-

ployed as a defense to a suit in the State Court on the notes, but could only be asserted in an action for affirmative relief in a federal tribunal. In the second, third, and fourth questions, respectively, appellant asked: "Where the consideration of notes is dependent upon a transaction which is illegal, may recovery nevertheless be had . . . upon the theory that the notes constitute a distinct contract based upon a valid consideration?" and "Is a contract which is founded on a violation of a penal statute void even though it is not expressly declared void by the statute?" and "Was it necessary that the evil intended to be prohibited by the anti-trust statute be malum in se in order to render the contract, which was in direct contravention of the act, void and unenforceable?"

It should be pointed out here that there is an apparent discrepancy betwen the first question and the pleas we have digested, for the former relates to three Acts of the Congress, i.e., the Sherman Anti-Trust Law and the Clayton and Robinson-Patman Acts, but the latter refers only to Section 13a and paragraphs (a) and (e) of Section 13, Title 15, U.S.C.A. As we understand it, the laws cited in the pleas are parts of the Clayton Act as amended by the Robinson-Patman Act, and not parts of the Sherman Anti-Trust Law.

Bearing in mind the observation of the trial judge, conceded by appellant to be accurate, concerning the nature of the defenses, the statement of the appellant about the needlessness of any reference to the testimony, and the character of the questions posed, we conclude that the questions we must decide are actually two, i.e., whether (1) remedies furnished by the Clayton and Robinson-Patman Acts may become defenses in a suit on promissory notes to cover the purchase price of articles alleged in the pleas to have been sold in violation of those laws, and (2) the sale and the notes constituted separate transactions. We shall confine our discussion accordingly.

To avoid confusion we wish expressly to repeat that but three portions of the code are thus involved, Section 13a and paragraphs (a) and (e) of Section 13. They brand as unlawful transactions which by differentials in sales price, re-

bate, discount and the like result in discrimination between purchasers and tend to create monopolies and stifle competition.

Appellants open their challenge with a reference to a decision of the Supreme Court of the United States rendered in 1901, Bement and Sons v. National Harrow Company., 186 U.S. 70, S. Ct. 747, 46 L. Ed. 1058. Action had been instituted in the New York State Court for damages arising from breach of contract for the sale of farm implements, and the plaintiff had recovered. The court observed that the sole federal question involved, in the appeal from an opinion of the court of appeals affirming the judgment, was the validity of the contracts in view of the Act of Congress designed to protect trade against unlawful restraint (Sherman Anti-Trust Law). The plaintiff had taken the position that only the Attorney General of the United States could bring an action under the statute, except that under one section of it (7) any person aggrieved might himself sue in a federal court. Reaction of the court to this contention was: "Assuming that the plaintiff is right so far as regards any suit brought under that Act, we are nevertheless of opinion that anyone sued upon a contract [This action originated in the state court] may set up as a defense that it is a violation of the Act of Congress, and, if found to be so, that fact will constitute a good defense to the action." So when this decision was made it was definitely held that the defendant in a suit in a state court on a contract offending against the Anti-Trust Law could take advantage of the infringement by plea.

As late as 1942 this principle was again recognized by the United States Supreme Court when in Sola Electric Company v. Jefferson Electric Company, 317 U. S. 173, 63 S. Ct. 172, 87 L. Ed. 165, Mr. Chief Justice STONE wrote: "This Court has declared that anyone sued upon a contract may set up as a defense that it is in violation of the Sherman Act. E. Bement & Sons v. National Harrow Co." He added that it had been decided "in Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 53 L. Ed. 486, 29 S. Ct. 280, that a vendee of goods purchased from an illegal combination in pursuance of an illegal agreement, both in violation of the

Sherman Act, can plead the illegality in defense to a suit for the purchase price."

The Supreme Court of New York in the case of Remington Rand v. International Business Machines Corporation, 3 N. Y. S. (2nd) 515, referred to the decision in the Bement case, supra, and announced the rule that a litigant in a state court could not rely upon the federal statute for affirmative relief, but could resort to it as a defense in an action on a contract executed in contravention of that law. While the decisions we have so far cited dealt with the Sherman Anti-Trust Law, the Supreme Court of New York reiterated the rule in Stock and Sons v. Jacobson, 18 N.Y.S. (2nd) 200, where the defense was predicated upon the Robinson-Patman Act.

The same general principle was applied in Pratt v. Paris Gaslight and Coke Company, 168 U. S. 255, 42 L. Ed. 458, when it was held that jurisdiction of a state court was not affected by an issue of the invalidity of a patent as an incident to a defense, although that court could have exercised no jurisdiction had the matter been presented to support a recovery.

The appellee insists that there are vital distinctions between the Sherman Anti-Trust Law on the one hand and the Clayton and Robinson-Patman Acts on the other that preclude application of the same rule relative to defenses interposed under both. At the outset he contends that "contracts, conspiracies and combinations" under the former were inherently illegal at common law, while "discriminations in price, services, facilities, discounts, rebates, etc., were not unlawful at common law and . . . became so under Federal laws for the first time by adoption of the" latter. Upon turning to 41 C. J. page 99, given as authority for the first statement, we find the language: "All contracts, combinations, or agreements which create or *tend to create* a monopoly are unlawful at common law. . . ," yet the words underscored are identical with the ones appearing in Section 13, supra, under which one of the pleas was filed.

Among authorities given for the text is our decision in Stewart, et al., v. Stearns & Culver, 56 Fla. 570, 48 So. 19,

where was written: "The validity or invalidity of an agreement that in operation *tends to restrain trade or to monopoly* is in general determined by the element of whether it is or is not injurious to the public. If injurious in any perceptible degree to any considerable portion of the public, the agreement is contrary to public policy, and will not be enforced." (again we have supplied italics.)

We do not find such difference between the phraseology of the Sherman Anti-Trust Law and the subsequent two acts as would justify a ruling that violation of the one could be employed as a defense, but a violation of the others could not. When the real design of laws of this character is borne in mind, Stewart, et al. v. Stearns and Culver, supra, any difference between the one and the other two becomes quite obscure. It is our view that the availability of the defenses was properly decided in Stock and Sons v. Jacobson, supra.

But the principal distinction, so the appellee urges, derives from the dissimilarity in the language used because in the Sherman Anti-Trust Law is the statement: "Every [such] contract . . . is . . . declared to be illegal," while Section 13a, supra, merely provides: "It shall be unlawful for any person . . . to be a party to, or assist in, any transaction . . . which discriminates . . . ." So it is argued that by the former the contract itself is illegal; by the latter only the discriminations are unlawful. Here, too, we fail to find such a contrast as would furnish sound reason for contrary rulings as to relevancy of the defenses.

Appellee stresses the opinion in Connolly v. Union Sewer Pipe Company, 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679, as authority for his position, but we believe careful study will reveal an essential difference between the factual situation there and here. Briefly, according to the cited case, purchasers of pipe attempted to defeat recovery upon notes they had signed to evidence the purchase price, because the seller had combined with other dealers in restraint of trade. The court found that the "purchases by the defendants had no necessary or direct connection with the alleged illegal combination," and that the defenses for that reason were not tenable. We think the criticism of disconnection between the

alleged violation and the obligation there is not present here where the amount of the notes, if the pleas be true, was affected by the transgression claimed and the purchase price for which notes were given was enlarged by reason of the discrimination. See Continental Wallpaper Company v. Voight and Sons Company, supra.

From the authorities it appears that the courts will not lend their aid toward the enforcement of a contract which will further the violation of the law. If for that reason recovery will be denied the plaintiff where he and the defendant may both be parties to the contract in contravention of the act, why would a defendant not a party, but a victim, be refused the same advantage? No reason occurs to us.

We reach the decision that the pleas, judging them by their substance, irrespective of any criticism as to their form, were appropriate, and in arriving at this view we have not overlooked the fact that the action was based on promissory notes instead of the contract for sale itself. That the suit was not based upon the contract, but upon notes which evidenced amounts due under the contract does not, in our opinion, alter the situation. Embrey v. Jamison, 131 U. S. 336 9 S. Ct. 776, 33 L. Ed. 172.

No necessity appears for further discussion of the questions we analyzed in the beginning. We must, however, decide what procedure should be followed by the trial judge to effectuate our judgment. We have said that appellants remarked the uselessness of referring to the transcript. There is sharp difference of opinion between counsel on the matter whether the court determined the controversy on the facts as well as the law. Despite this contention of the appellant, the appellee has repeatedly alluded to the testimony.

The judge recited that the matter was being heard upon "application for entry of final judgment." He adjudged that plaintiff recover, stating in detail the amounts due on the notes for principal and interest and also for attorney's fees and costs. A few days beforehand he had entered his "order on pleadings and pre trial conference," concluding with the direction to counsel for plaintiff to prepare a judgment. It is

largely from the recitals in this order that we glean the extent of his consideration.

There is no dispute about the plaintiff's having proved its case, so we need decide whether the judge thought recovery was justified despite testimony in support of the pleas, they being inappropriate, or was warranted even if the testimony were taken into account, it being insufficient.

Aside from the defense of conditional delivery, which has been abandoned, he observed: "As to the defense of illegality of consideration or unlawfulness of the notes under the Federal Statutes . . . I am of the opinion that under decisions of the Supreme Court of the United States such defense cannot be offered in a suit to collect the purchase price of merchandise sold and delivered and affected by the provisions of that act. The act itself prescribes the only remedies available to persons affected by its violation and no other method of relief is to be had." He continued, as we have already quoted, "The contract of sale was not under these decisions Malum in se but Malum prohibita only." Then he concluded: "I am, therefore, of the opinion that all questions of fact and law on which the rights of the parties depend are settled in favor of the plaintiff and under Hillsborough County v. Sutton, 8 Southern 2nd, 401 [150 Fla. 601] this Court should enter judgment in its behalf on the pleadings *and facts* disclosed by the record in this cause." (Italics supplied.)

In the cited case was posed the question whether final judgment could be entered at the conclusion of a pre-trial conference, the procedure followed here. It appears to have been the ruling that such method was proper where material facts were not controverted. The court said: "If the conference progresses to the point of eliminating all questions of fact then the court may give judgment according to law on the facts before him." In the light of this rule, then, the judge must have felt that he should enter a judgment because of a situation where questions of fact had been eliminated and only a question of law remained for his determination. Such a condition obtained so far as the plaintiff's case was concerned, but there is much in the record to indicate that issues of fact were not absent if testimony relative to the

pleas were to be considered. In other words, the moment the issues raised by the pleas are contemplated disputed facts appear. We think this is readily apparent from appellee's brief, where much space is devoted to the evidence. For illustration, we find in it the statement that it was "within the province of Judge Parks, who heard the . . . testimony . . . and saw the demeanor of this witness, to apply to his testimony the rule: *'Falsus in uno, falsus in omnibus,'*" etc., referring to a means by which may be judged the testimony of a witness whose statements are alternately true and untrue.

It is evident to us that the trial court thought it proper to enter the judgment pursuant to pre-trial conference on the theory that the facts supporting the declaration were not disputed and that conflicting testimony on the pleas would not preclude such a course inasmuch as the pleas being improper, the evidence relevant to them could be ignored. As we have reached a contrary view about the pertinence of the defenses, it seems fitting for the cause to be reversed that the issues raised by the pleas as they now stand; or are eventually settled, may be tried.

The judgment is, therefore, reversed with directions for further proceedings conformable to this opinion.

Reversed.

BROWN, CHAPMAN, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., and TERRELL, J., dissent.

BUFORD, C. J., dissenting:

I disent because I think the sales contract which constituted a part of plea was free of discrimination and therefore the pleas were of no avail.

PER CURIAM:

On rehearing granted after arguments and briefs submitted, we are of the opinion that the defense attempted to be interposed was not available under the facts submitted in evidence to the court below and, therefore, the judgment should be affirmed.

It is so ordered.

TERRELL, BROWN, BUFORD and SEBRING, JJ., concur.

CHAPMAN, C. J., THOMAS and ADAMS, JJ., dissent.

SEBRING, J., concurring:

Upon reconsideration of the matter I have come to the conclusion that the subject matter of the pleas is not legally available as a defense in the state courts in a common law suit on the promissory notes involved. I therefore concur in the conclusion that the judgment of the Court below should be affirmed.

DISSENTING OPINION:

Upon rehearing granted we adhere to the original opinion.

CHAPMAN, C. J., THOMAS and ADAMS, JJ., concur.